324 P.2d 228

**Elliot MONTIERTH, Marvin Montierth and Jerry Montierth, Appellants,**

v.

**STATE LAND DEPARTMENT, State of Arizona, Appellee.**

No. 6240.

Supreme Court of Arizona.

April 16, 1958.

Edward E. Williams and Andrew L. Bettwy, Phoenix, for appellants.

Robert Morrison, Atty. Gen., and Herbert B. Finn, Sp. Asst. Atty. Gen., for appellee.

UDALL, Chief Justice.

This is a consolidated appeal from three related judgments entered in administrative appeals to the superior court, wherein the trial court affirmed the actions taken by the State Land Commissioner in awarding to A. R. Spikes grazing leases on certain state lands in Cochise County.

The controversy arose in this manner: on December 17, 1953, the State of Arizona took title to tracts of land aggregating some 480 acres lying in sections 14, 23 and 25 in Twp. 13-South, Range 29-East, G. & S. R. B. & M. This acreage was all classified as grazing land and the Land Department gave public notice of its availability for grazing purposes. Conflicting applications were filed for leases thereon by A. R. Spikes, a cattleman, and by appellants Elliot Montierth and his two sons, Marvin and Jerry Montierth, nearby farmers and ranchers. (Separate applications were required for lands lying in the different sections.) In each of the verified applications made pursuant to Rule 4 (art. I, Subchapter B, Ch. II, Title 25, Administrative Procedure Act, entitled "General Rules and Regulations Governing Leasing of State Lands"), the question was asked if the applicant claimed a superior right to lease, and if so to give particulars thereof. In response thereto each of the claimants asserted a preferential right.

Thereupon appellee State Land Commissioner (hereinafter termed Commissioner), acting under the provisions of Rule 33, Adm.Proc.Act, supra, requested statements of equities from the conflicting applicants. The written notice sent them paraphrased another portion of Rule 33, viz.:

"You and each of you, are advised that statement of equities, or claim of preferential right in the above conflict * * * *shall be verified before a Justice of the Peace, Notary Public or other person authorized to administer oaths.*" (Emphasis supplied.)

Appellants Montierth, in filing their statement, met this requirement. Mr. Spikes set forth fully his claimed equities but wholly failed to verify same in any manner. (Incidentally, this omission forms the basis for three out of the appellants' five assignments of error.) Upon this record the Commissioner determined that it would be for the best interests of the State to award leases in each instance to applicant Spikes, as it was found that he had superior equities therein, and such was the order of the Commissioner.

Montierths then perfected appeals to the superior court under the provisions of section 11-110, A.C.A.1939, Cum.Supp.1952, where a trial de novo was had. The three appeals were consolidated and the trial court, in addition to reviewing the entire proceedings below, heard the testimony of Roger Ernst, State Land Commissioner,

and of applicant A. R. Spikes, who were called as witnesses by appellants Montierth. At the conclusion of the hearing the trial court made findings favorable to Mr. Spikes and entered judgment, in each instance affirming, in all respects, the action of the Commissioner in issuing leases to A. R. Spikes. This appeal followed.

The first assignments of error challenge the action of the trial court in upholding the decision of the Commissioner in preferring contestant Spikes over the appellants, primarily for the reason that Spikes had failed to verify his statement of equities filed with the Commissioner. Appellants insist this omission (though not labeled as such it is in effect a jurisdictional challenge) was fatal to Mr. Spikes' claim and the lower court should have dismissed such statement of equities. It seems to us that these contentions are based upon a false premise. We find nothing in the rules and regulations of the State Land Department compelling the filing of a statement of equities, nor is there a provision that the Commissioner in determining preference rights can consider only such statements. To the contrary Rule 33, supra, provides in part that where there are conflicting applications to lease, the Commissioner "may" require verified statements of equities. Objections thereto may be filed in a responsive pleading within ten days, and though appellants strongly rely on this

failure to verify they did not raise this objection before the Commissioner. Furthermore, the rule provides for an oral hearing if desired and then states:

"Failure of any applicant to submit his statement of equities or claim of preferential right as above prescribed * * * will not preclude the Commissioner from examining the evidence and records or from hearing testimony submitted by the other conflicting applicants and making his decision thereon.

"Nothing herein shall be construed to limit or diminish the jurisdiction of the Commissioner."

This language indicates that a total failure to submit a statement does not preclude the Commissioner from proceeding to make his determination upon whatever record and testimony is available. Conceding, without deciding, that Spikes' unverified statement of "claim for preference" could not be considered by the Commissioner, still it does not necessarily follow that his action in granting the leases to Spikes was invalid as he had before him the latter's original verified application wherein his claims to preference were asserted.

We hold the lack of verification was not a jurisdictional defect, either before the

Commissioner or the superior court, and hence these first assignments of error are without merit.

■ The final two assignments of error concern the superior court's findings—upholding the decision of the Commissioner—that Spikes had a better right to lease than did appellants. These assignments go to the sufficiency of the evidence to sustain the findings and judgment based thereon. Let us examine the record, for, under the familiar rule, where there is substantial evidence in the record to sustain the lower court's findings of fact, this court will not disturb those findings even though there was also contradictory evidence, Ramirez v. Burrell, 77 Ariz. 1, 266 P.2d 390; Tang v. Avitable, 76 Ariz. 346, 264 P.2d 835; Lewis v. Farrah, 65 Ariz. 320, 180 P.2d 578; Tyson v. Tyson, 61 Ariz. 329, 149 P.2d 674.

■ At a trial de novo in superior court on appeal from the Commissioner's decision, the case will be heard as if it were an original proceeding. The court may give due consideration to the Commissioner's findings or form independent conclusions of its own. See A.R.S. § 37–134 (then section 11–110, A.C.A.1939, 1952 Cum. Supp.) Duncan v. Mack, 59 Ariz. 36, 122 P.2d 215; Cf. Schnatzmeyer v. Industrial Commission, 78 Ariz. 112, 276 P.2d 534.

At this trial de novo the lower court had, by stipulation, all of the record before the Commissioner and in addition thereto the testimony of Mr. Spikes and the Commissioner who were called by appellants to testify. Spikes testified his cattle had run at large over this area for thirty years and had grazed on this land for twenty years. He stated he controlled the nearest water and these lands were within his fenced enclosure that included allotment covered by a Taylor Grazing Permit.

■ The Commissioner testified that prior use is an important factor in resolving conflicting applications for leases. The court relied heavily on this prior use and further stated that Spikes' lack of verification of his original claim of preference was not fatal in that proof of the statements therein was substantially shown at the trial. In fact, the testimony at the trial expanded all of the claims made in the questioned unverified statement of equities.

The trial court, on the whole record, had ample evidence from which it could find Spikes' equities were superior to those of appellants.

Judgment affirmed.

WINDES, PHELPS, STRUCKMEYER, and JOHNSON, JJ., concur.