Argued March 7, affirmed May 16, 1978

LEE et ux, *Appellants,*
*v.*
HANSEN et ux, *Respondents.*
(No. 76-10-273, SC 254-04)
578 P2d 784

[ 371 ]

Donald L. Alderton, Portland, argued the cause for appellants. With him on the brief was James W. Walker, Portland.

No appearance for respondents.

Before Denecke, Chief Justice, Howell and Lent, Justices, and Joseph, Justice Pro Tempore.

JOSEPH, J., Pro Tempore.

**JOSEPH, J.,** Pro Tempore.

This case involves the title to a strip of land between adjoining landowners. On October 21, 1976, plaintiffs, the record owners, filed an action in ejectment against the defendants. Defendants' amended answer generally denied plaintiffs' allegations and affirmatively alleged that defendants held the land by adverse possession. The case was tried to the court, which found that

"* * * the defendants and their predecessors in interest * * * have been in open, notorious, continuous, adverse, hostile and exclusive possession of the * * * [contested] property and are vested with the fee title therein * * *."

The issue is whether there was substantial evidence to sustain the trial court's findings.

The evidence showed that the defendants own and reside on property which is located directly north of land owned by plaintiffs. The disputed trapezoidal-shaped area is shown on the accompanying diagram. Defendants bought their property on contract approximately eight years prior to the date of the trial. At that time defendants "understood" the south boundary of the property was located a few feet south of a fence which separated the westerly portions of the two properties and that the boundary extended eastwardly from the fence on the same course to the filbert tree south of their house.

One of defendants' predecessors in interest testified that she also believed the boundary line was just south of the fence and eastward along the unfenced part. She and her husband had held the land for 10 years prior to contracting to sell it to the defendants in 1969. When the predecessors bought the land, there was a row of small holly trees along the south line of the disputed area. They built the fence in 1960, and in 1961 they built a small barn within the fenced area on contested property. In the area between the east end of the fenced area and the filbert tree, they maintained a

[ 373 ]

APPELLANT'S EXHIBIT

28'

N

Defendants' Property

True North Line -- Plaintiffs' Property

396'

filbert tree

greenhouse

20.8'

barn

223.8'

fence

Plaintiffs' Property

173'

15.3'

[ 374 ]

lawn and put in a holly tree, a shade tree and a clothesline. In 1975, defendants built a 55' by 15' greenhouse on part of that area.

The testimony was that neither defendants nor their predecessors intended to claim more land than was described in the deed and contract, but they believed the deed line included the disputed strip. Defendants first learned of a dispute in March, 1976, when plaintiffs' property was surveyed shortly after they had acquired it as vacant and undeveloped land. Defendants' home's eave line is approximately on the dividing line described in the deeds. At one time a user of the property south of the disputed area erected a fence along the area's south line to keep horses enclosed.

■ In order to establish title by adverse possession, defendants must establish by "clear and positive proof" that they have had actual, open, notorious, exclusive, continuous and hostile possession of the premises for the full statutory period of 10 years under claim of right or color of title. *Beaver v. Davis,* 275 Or 209, 211, 550 P2d 428 (1976); *Laurance v. Tucker,* 160 Or 474, 85 P2d 374 (1939); ORS 12.050. Plaintiffs' first contention is that the trial court erred in finding that defendants met the element of hostility requisite to adverse possession because defendants intended to hold only that property conveyed to them in the deed and defendants displayed doubt as to the property line.

In the leading case, *Norgard v. Busher,* 220 Or 297, 303, 349 P2d 490 (1960), we held that "possession under belief of ownership satisfies the element of hostility in the application of the doctrine of adverse possession." However, the belief must result from a "pure mistake," as distinguished from a mistake based upon a "conscious doubt." *Grimstad v. Dordan,* 256 Or 135, 140, 471 P2d 778 (1970).

■ The testimony was that defendants and their predecessors in interest only intended to occupy the land

[ 375 ]

described in the deed; but when they purchased the property, they understood that its south line was where the south line of the disputed strip was. The photographic exhibits show that that belief was well warranted in the absence of a survey. Neither defendants nor their predecessors ever knew of any different boundary until the surveyor placed his stakes in 1976. On those facts, that belief was clearly the result of "pure mistake," and therefore defendants' intent was sufficient to satisfy the hostility element of the doctrine of adverse possession.

■ Plaintiffs' second contention is that the trial court erred in finding that defendants were in open, notorious and continuous possession for the statutory period of 10 years. An adverse possessor must establish an occupation or use of the land that would be made by an owner of the same type of land, taking into account the uses for which the land is suitable. *Almond v. Anderegg,* 276 Or 1041, 1047, 557 P2d 220 (1976); *Norgard v. Busher, supra* at 304. The essence of plaintiffs' argument is that defendants' use of the land was not apparent and that the addition of a greenhouse on the unfenced lawn area extending to the filbert tree constituted a change of use tolling the statutory period.

■ Defendants' predecessors in interest used the fenced portion of the land as pasture as well as for a barn and the unfenced portion extending to the filbert tree as a side yard south of the house. Photographs taken in the early 1960's provided clear and positive evidence that the pasture and yard were well-maintained and apparent to even a casual observer. There were at least two planted trees and a clothesline in the yard. Further, an aerial photograph taken in 1970 shows that the maintained area stopped just south of the fence and extended in a distinct line to a filbert tree south of the house. The defendants' construction of a greenhouse on the side yard was simply the act of an ordinary owner making a suitable

[ 376 ]

additional use of the land. The trial court properly found the possession of the area by defendants and their predecessors was open, notorious and continuous for longer than 10 years.

The evidence was sufficient to sustain the trial court's finding that defendants had acquired a title to the contested land by adverse possession.

Affirmed.